FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JOHN G. DUBOIS,
*Plaintiff-Appellant,*
and
TIMOTHY PRINDABLE,
*Plaintiff,*
v.
ASSOCIATION OF APARTMENT OWNERS OF 2987 KALAKAUA, a domestic nonprofit corporation; CERTIFIED MANAGEMENT INC., a domestic corporation; LOIS CAIN; STACY TOKAIRIN; SUZANNE MACGILL; JOHN DOES 1-10; DOE PARTNERSHIP; DOE CORPORATIONS, or other Entities 1-10,
*Defendants-Appellees.*

No. 04-15695
D.C. No. CV-02-00504-ACK
OPINION

Appeal from the United States District Court
for the District of Hawaii
Alan C. Kay, District Judge, Presiding

Submitted November 22, 2005*
Honolulu, Hawaii

Filed July 13, 2006

*The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a).

Before: Michael Daly Hawkins, M. Margaret McKeown, and Richard R. Clifton, Circuit Judges.

Opinion by Judge Clifton

## SUMMARY

### Individual Rights/Disabilities

The court of appeals affirmed a judgment of the district court. The court held that a Fair Housing Act (FHA) discrimination claim necessarily fails where the defendant never refused to make the requested accommodation.

Appellant John Dubois and Timothy Prindable brought suit in district court in Hawaii against appellees including a condominium association for refusing to permit them to keep a dog in their condominium unit. Their primary legal claim was that the condominium association had discriminated against them in violation of the FHA, 42 U.S.C. §§ 3601-3631 and Hawaii's Discrimination in Real Property Transactions Act, by failing to make a reasonable accommodation for Prindable's disability. Dubois and Prindable also asserted claims for intentional infliction of emotional distress, negligent infliction of emotional distress, defamation, invasion of privacy, breach of fiduciary duty, and abuse of process and prayed for punitive damages and injunctive relief. Dubois and Prindable filed their suit rather than await the outcome of a state investigation they initiated by filing a complaint with the federal Department of Housing and Urban Development. The condominium association had actually granted Dubois and Prindable a temporary permit to keep the dog and never required the dog to leave. The district court granted summary judgment in favor of the condominium association, in a series of orders, and denied Dubois and Prindable's motion for reconsideration as to their FHA claim, concluding that most

of the evidence submitted in support of the motion was merely reinforced previously known facts or was immaterial. Both parties stipulated to dismissal of the complaint as to Prindable, leaving Dubois as the sole remaining plaintiff.

Dubois appealed.

**[1]** The FHA makes it unlawful to discriminate against any person in the provision of services or facilities in connection with his dwelling, because of a handicap of that person or any person associated with that person. **[2]** To prevail on a claim under 42 U.S.C. § 3604(f)(3), a plaintiff must prove, among other things, that the defendant refused to make the requested accommodation. **[3]** The condominium association never required the dog to leave and thus never refused to make the requested accommodation, which is one of the essential elements of the FHA claim. Since the condominium association never refused to make the requested accommodation, Dubois' FHA claim necessarily failed. Summary judgment in favor of the condominium association on the FHA discrimination claim was appropriate.

**[4]** The court of appeals agreed with the district court's assessment of the evidence submitted in support of the motion for reconsideration. More importantly, none of the newly submitted evidence created a triable issue of fact on the FHA discrimination claim, because none of it changed the crucial fact that the condominium association never actually refused plaintiffs' requested accommodation.

**[5]** The court of appeals also concluded that Dubois failed to make out a prima facie case of discrimination under the state statute, because he failed to set forth any evidence that the condominium association denied Dubois and Prindable's requests; **[6]** Dubois failed to make out a prima facie case of retaliation, under the Discrimination in Real Property Transactions Act, for bringing the FHA discrimination claim; **[7]** because Dubois did not prove the factual predicate for his

emotional distress claims, they necessarily failed; **[8]** Dubois failed to make out a prima facie case of defamation; **[9]** once Prindable was dismissed from the complaint, Dubois lacked standing to assert Prindable's claim that the condominium association tortiously invaded Prindable's right to privacy; and **[10]** in sum, the district court did not err in granting the condominium association's motion for summary judgment as to all remaining claims. The judgment of the district court had to be affirmed.

---

## COUNSEL

Shawn A. Luiz, Honolulu, Hawaii, for the plaintiff-appellant.

Lissa H. Andrews, Honolulu, Hawaii, for the defendants-appellees.

---

## OPINION

CLIFTON, Circuit Judge:

Plaintiffs John Dubois and Timothy Prindable sued a condominium association, two association board members, the property management company, and one of its employees (collectively, the "Condominium Association") for refusing to permit plaintiffs to keep a dog in their condominium unit. Their primary legal claim was that the Condominium Association had discriminated against plaintiffs in violation of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3631, by failing to make a reasonable accommodation for Prindable's disability. The district court granted summary judgment in favor of the Condominium Association, in a series of orders. Summary judgment on the FHA discrimination claim was granted in a published decision. *See Prindable v. Ass'n of Apt. Owners*, 304 F. Supp. 2d 1245 (D. Haw. 2003). The district court

later denied a motion for reconsideration of that order, and then granted summary judgment to the Condominium Association on all remaining claims. Dubois appeals the judgment which resulted from those orders. We affirm.

## I. BACKGROUND

The factual background of this case has been thoroughly detailed by the district court, *see id.* at 1249-52, and we will not repeat that exposition here. For purposes of this appeal, it is enough to note the following facts.

Dubois was the owner of a unit in a residential condominium project, known as and located at 2987 Kalakaua Avenue in Honolulu, Hawaii, an attractive site on the beach of Waikiki, across from Kapiolani Park and near Diamond Head.[1] He lived in that apartment together with Prindable. The condominium project was subject to bylaws promulgated by its Association of Apartment Owners, one of which sought to limit the presence of animals:

> No animals . . . shall be permitted on the premises, except that qualified individuals with disabilities

[1]During the pendency of this dispute, Dubois lost ownership of the unit. As described in the district court's opinion, *Prindable*, 304 F. Supp. 2d at 1248 & nn. 5 & 6, the Condominium Association foreclosed upon the unit due to nonpayment of maintenance fees and subsequently assessed late fees and legal fees. Dubois refused to vacate the unit and contested the foreclosure in separate state court proceedings. After a state court granted the Condominium Association's ejectment motion, Dubois ultimately vacated the unit in September 2003. Although Dubois attempts in his briefs to raise issues related to the foreclosure in this action, they are not properly before us. Similarly, although Dubois and the Condominium Association have been at war for years—they have been parties to at least four state court actions, in addition to administrative proceedings—and the arguments made to us have referred to other grievances, we limit our discussion to the subjects properly raised by plaintiffs in this federal court action, namely the federal and state fair housing act claims and asserted tort claims.

> may have assistance animals. Such animals shall be required to conform to appropriate behavior standards established by the board and shall be removed if they disturb the quiet enjoyment of other residents. A disabled resident must provide appropriate medical documentation justifying the need for the assistance animal before bringing it onto the project.

In January 2000, Dubois brought home Einstein, an English bulldog. In a purported effort to satisfy the bylaw quoted above, Dubois and Prindable submitted letters from doctors recommending that one or the other be permitted to keep Einstein for "medical reasons," with little explanation. The Condominium Association and its property management company, Certified Management, Inc., requested more information about the alleged conditions, but none of the doctors ever responded. Dubois and Prindable took the position that neither they nor their physicians were obligated to disclose further information, but they eventually submitted letters from a behavioral medicine specialist and two doctors stating that Prindable suffered from depression, that he would benefit from animal-assisted therapy, and that separation from Einstein would exacerbate his condition.

At that point, the Condominium Association granted plaintiffs temporary permission to keep Einstein, pending its review of the submissions concerning Prindable's condition. Before the Condominium Association took any further action to evict the dog, Prindable filed a housing discrimination complaint against the Condominium Association with the U.S. Department of Housing and Urban Development ("HUD"). HUD then referred the complaint to the Hawaii Civil Rights Commission. The Condominium Association advised Dubois and Prindable that it would continue the temporary exemption for Einstein, with final approval now contingent upon the results of the state agency's investigation.

Rather than await the outcome of the state investigation, though, Dubois and Prindable filed the current lawsuit, alleg-

ing discrimination and retaliation in violation of the FHA and its Hawaii counterpart, the Discrimination in Real Property Transactions Act, Haw. Rev. Stat. §§ 515-1 to -20 (2005). They also asserted claims for intentional infliction of emotional distress, negligent infliction of emotional distress, defamation, invasion of privacy, breach of fiduciary duty, and abuse of process and prayed for punitive damages and injunctive relief.

The Condominium Association subsequently moved for summary judgment on the entire complaint. In its published order, filed on July 11, 2003, the district court granted the motion only as to the FHA discrimination claim. *See Prindable*, 304 F. Supp. 2d at 1262-63. Dubois and Prindable filed a motion for relief from that order, which the district court treated as a motion for reconsideration and which it denied. The Condominium Association then filed a motion for summary judgment as to all remaining claims. Before the district court decided that motion, both parties stipulated to dismissal of the complaint as to Prindable, leaving Dubois as the sole remaining plaintiff. The district court subsequently granted summary judgment to the Condominium Association on all remaining claims. Dubois timely appealed.

## II. DISCUSSION

This court reviews *de novo* the district court's decision to grant summary judgment. *Balint v. Carson City*, 180 F.3d 1047, 1050 (9th Cir. 1999) (en banc). We review for an abuse of discretion the district court's denial of a motion for reconsideration. *Caroll v. Nakatani*, 342 F.3d 934, 940 (9th Cir. 2003).

### A. *The FHA Discrimination Claim*

**[1]** Plaintiffs' primary claim was that the Condominium Association discriminated against them on the basis of handicap in violation of the FHA when it refused to allow Dubois

and Prindable to keep Einstein as a reasonable accommodation for Prindable's mental illness. The FHA makes it unlawful to "discriminate against any person . . . in the provision of services or facilities in connection with [his] dwelling, because of a handicap" of that person or any person associated with that person. 42 U.S.C. § 3604(f)(2). Discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a disabled] person equal opportunity to use and enjoy a dwelling. . . ." 42 U.S.C. § 3604(f)(3)(B); 24 C.F.R. § 100.204. "The reasonable accommodation inquiry is highly fact-specific, requiring case-by-case determination." *United States v. California Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997) (citations omitted).

**[2]** To prevail on a claim under 42 U.S.C. § 3604(f)(3), a plaintiff must prove all of the following elements: (1) that the plaintiff or his associate is handicapped within the meaning of 42 U.S.C. § 3602(h); (2) that the defendant knew or should reasonably be expected to know of the handicap; (3) that accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that defendant refused to make the requested accommodation. *See* 42 U.S.C. § 3604(f)(3)(B); *California Mobile Home*, 107 F.3d at 1380; *HUD v. Riverbay Corp.*, HUDALJ 02-93-0320-1 (Sept. 8, 1994).

**[3]** Although the parties have argued various issues at length, there is a simple answer here. The Condominium Association never required Einstein to leave and thus never refused to make the requested accommodation, which is one of the essential elements of the FHA claim. Dubois and Prindable kept Einstein from the day they brought him home in January 2000 until the day they vacated their unit in September 2003. After Prindable requested an accommodation, the Condominium Association granted them a temporary exemp-

tion from the bylaw while it investigated and decided what to do. Although Dubois and Prindable made the investigation difficult, the Condominium Association did not force the issue. Instead, the Condominium Association, presumably out of patience, prudence, or a combination of both, left the temporary exemption in place and so advised Dubois and Prindable. Since the Condominium Association never refused to make the requested accommodation, plaintiffs' FHA claim necessarily failed. *See* 42 U.S.C. §§ 3604(f)(3)(B), 3613(a)(1)(A) (requiring a defendant to "refus[e] to make reasonable accommodations" before a plaintiff can file suit under 42 U.S.C. § 3613); *see also Bryant Woods Inn, Inc. v. Howard County*, 124 F.3d 597, 602 (4th Cir. 1997) ("[A] violation [of the FHA] occurs when the disabled resident is first denied a reasonable accommodation. . . ."). Summary judgment in favor of the Condominium Association on the FHA discrimination claim was appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. . . .").[2]

*B. Motion for Reconsideration*

**[4]** Dubois next argues that the district court erred in denying plaintiffs' motion for reconsideration, based on "new material facts not previously available." District of Hawaii Civil Local Rule 60.1. The district court reviewed all of the evidence. It concluded that the evidence, most of it inadmissible under the Federal Rules of Evidence in any event, merely reinforced previously known facts or was immaterial. We agree with that assessment. More importantly, none of the newly submitted evidence created a triable issue of fact on the

[2]In so concluding, we need not and do not reach other issues addressed by the district court, including whether the plaintiffs must prove that Einstein "is an individually trained service animal." *Prindable*, 304 F. Supp. 2d at 1257.

FHA discrimination claim, because none of it changed the crucial fact that the Condominium Association never actually refused plaintiffs' requested accommodation.

*C. Remaining Claims*

The district court subsequently granted summary judgment in favor of the Condominium Association as to all remaining claims. We agree that each of the claims addressed below was properly dismissed for failure of proof. Plaintiffs' exhibits were largely irrelevant or insufficient, leaving as the only other "evidence" their uncorroborated and self-serving declarations, which alone do not create any genuine issues of material fact. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). We also confine our review to those disputed facts that plaintiffs identified in their Concise Statement, as those are the only facts the district court was obligated to consider. *See* District of Hawaii Civil Local Rule 56.1(f).

In addition to the discrimination claim, Count I alleged retaliation under the FHA. On appeal, Dubois does not challenge the district court's grant of summary judgment on this issue.

**[5]** Count II alleged discrimination and retaliation under Hawaii's Discrimination in Real Property Transactions Act, Haw. Rev. Stat. §§ 515-1 to -20, which is nearly identical to the FHA in language and purpose. In the absence of Hawaii state cases interpreting the statute, we turn to our FHA jurisprudence for guidance as to how the state's highest court might rule. *See Assurance Co. of America v. Wall & Assocs. LLC of Olympia*, 379 F.3d 557, 560 (9th Cir. 2004). Dubois claimed that the Condominium Association discriminated against him and Prindable by refusing two reasonable accommodation requests: one for Einstein, and one for a parking stall or drop-off point closer to their apartment. In both instances, he failed to make out a prima facie case of discrimi-

nation under the state statute, because he failed to set forth any evidence that the Condominium Association denied their requests.

[6] Dubois also failed to make out a prima facie case of retaliation, under the Discrimination in Real Property Transactions Act, for bringing the FHA discrimination claim. Turning to our circuit's case law for guidance, such a claim requires a prima facie showing that (1) the plaintiff was engaged in protected activity; (2) he suffered an adverse action in the form of coercion, intimidation, threats, or interference; and (3) there was a causal link between the two. *See Brown v. City of Tucson*, 336 F.3d 1181, 1192 (9th Cir. 2003). We find that Dubois's claim fails for multiple reasons. First, Dubois presented evidence of a fight with a neighbor and the vandalization of his car that predated the FHA complaint; such evidence was completely irrelevant to the retaliation claim. Second, Dubois presented no evidence that the Condominium Association blocked him from attending a board meeting. Third, Dubois did not show that other actions allegedly taken by the Condominium Association and his neighbors, such as the Condominium Association's placement of a dumpster near his unit, its alleged tolerance of other pets in the complex, or neighbors pounding on his door or taking pictures of him, were in any way motivated by the FHA complaint. Finally, Dubois presented no evidence that the Condominium Association's initiation of attorneys' fees and foreclosure proceedings against him was motivated by anything other than its desire to collect the money and property that it was potentially entitled to under state law. *See* Haw. Rev. Stat. §§ 514A-90, -94.

[7] In Count III, Dubois alleged that the Condominium Association intentionally and negligently caused him emotional distress by discriminating and retaliating against him in violation of federal and state fair housing acts. Because Dubois did not prove the factual predicate for his emotional distress claims, they necessarily fail. *See Hac v. Univ. of*

*Hawaii*, 73 P.3d 46, 59 (Haw. 2003) ("Inasmuch as the jury did not find that Plaintiff was subjected to a hostile work environment because of gender or racial bias, *a fortiori*, the jury could not have found in Plaintiff's favor on her claim of intentional infliction of emotional distress. . . ." ).

**[8]** Dubois alleged in Count IV that the Condominium Association defamed him in the course of the Hawaii Civil Rights Commission's investigation, Honolulu Police Department investigations, and at a Circuit Court hearing arising out of his disputes with the Condominium Association and his neighbors. Dubois failed to make out a prima facie case of defamation because these statements were covered by qualified privilege. They were made to officials whose duty it was to record them, and published to people with an interest in the investigations and proceedings. *See Courtney v. Canyon Television & Appliance Rental, Inc.*, 899 F.2d 845, 850 (9th Cir. 1990).

**[9]** As to Count V, once Prindable was dismissed from the complaint, Dubois lacked standing to assert Prindable's claim that the Condominium Association tortiously invaded Prindable's right to privacy. *See Joy A. McElroy, M.D., Inc. v. Maryl Group, Inc.*, 114 P.3d 929, 937 (Haw. 2005) ("[T]he 'general rule is that the doctrine of standing prohibits a litigant from asserting another's legal right.' ") (citation omitted).

Dubois alleged in Count VI that the Condominium Association's officers and directors breached fiduciary duties to him, but he failed to even allege gross negligence on their part, as required by statute. *See* Haw. Rev. Stat. §§ 414D-149(f), -155(e).

Dubois alleged in Count VII that the Condominium Association was liable for abuse of process for initiating state proceedings against him to collect attorneys' fees and to foreclose on his property. The Condominium Association ini-

tiated these proceedings for their intended purposes under Haw. Rev. Stat. §§ 514A-90, -94, and Dubois presented no evidence that the Condominium Association did so " 'primarily' for an ulterior motive." *Wong v. Panis*, 772 P.2d 695, 700 (Haw. App. 1989), *abrogated on other grounds by Hac*, 73 P.3d 46.

**[10]** Finally, on appeal, Dubois does not challenge the district court's grant of summary judgment on Counts VIII and IX, his prayers for punitive damages and injunctive relief, respectively. In sum, the district court did not err in granting the Condominium Association's motion for summary judgment as to all remaining claims.

## III. CONCLUSION

Although humor can be found in these facts, this story is more tragic than comic. This litigation undoubtedly took a substantial toll on the individual parties and other persons connected with them and with this condominium project, not only in terms of time and expense, but also from the disharmony and aggravation that burdened their lives. Racing to the courthouse is not always the right approach. Albert Einstein was known not only as a genius but also as a peaceful and patient man. On conflicts large and small, he once remarked, "In the last analysis, every kind of peaceful cooperation among men is primarily based on mutual trust and only secondly on institutions such as courts of justice and police."[3] Einstein's owners would do well to heed that advice.

**AFFIRMED.**

---

[3] Albert Einstein Quotes, http://www.spaceandmotion.com/Albert-Einstein-Quotes.htm (last visited June 14, 2006).